# Banning, Cooper & Company, Limited, *v.* Murphy, Appellant.

*Affidavit of defense—Practice, C. P.—Information and belief—Rules of court.*

1. Under the rules of the court of common pleas of Allegheny county, where the defendant makes his own affidavit of defense, and avers certain matters on information and belief, he must also aver his ability to prove such matters on the trial of the cause. Otherwise the affidavit is fatally defective.

2. In an action to recover for the breach of a contract of sale, an allegation of fraud in the affidavit of defense sufficient to justify the defendant in rescinding the contract, must be specific in its averments. If not, the affidavit will be insufficient to prevent judgment.

Argued Nov. 1, 1909. Appeal, No. 122, Oct. T., 1909, by defendant, from order of C. P. No. 3, Allegheny Co., Feb. T., 1909, No. 611, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Banning, Cooper & Company, Limited, v. P. H. Murphy. Before Fell, Brown, Mestrezat, Potter and Stewart, JJ. Affirmed.

Assumpsit for breach of contract of sale.

Rule for judgment for want of a sufficient affidavit of defense.

Evans, J., filed the following opinion:

The plaintiff brings this action to recover damages for

breach of a contract in writing executed between the plaintiff, Banning, Cooper & Company, Limited, and the Allegheny Valley Malleable Iron Company. The plaintiff alleged two contracts with the Allegheny Valley Malleable Iron Company, for the sale of pig iron, both dated May 28, 1907, and each for the sale of 1,500 tons of pig iron for the price of $24.40 per ton f. o. b. cars, New Kensington, Pa. That on or about February 11, 1908, there was still undelivered of the two contracts 2,012 tons and 500 pounds of iron, and on that date the plaintiff demanded of the Allegheny Valley Malleable Iron Company, and also of the defendant, P. H. Murphy, who was its president, that directions for the time and shipments of this undelivered balance due under said contracts be given, and that the said corporation, the Allegheny Valley Malleable Iron Company, and the said defendant, P. H. Murphy, "neglected and refused to give said directions, and the said corporation and the said defendant notified the plaintiff not to ship any more iron under the said contracts, as the same would not be received."

Plaintiff further alleges in its statement of claim that it brought suit against the Allegheny Valley Malleable Iron Company for a breach of this contract, and "the said corporation then repudiated the said contract and by and with the approval and consent of the said P. H. Murphy, the defendant herein, claimed and alleged that the said P. H. Murphy had no authority from the corporation to make the said contracts, and that therefore the corporation was not liable on the contracts."

The plaintiff alleges as its measure of damages that at the date of the breach, the price of pig iron, as called for by the contracts, had fallen from $24.40 per ton f. o. b. cars, New Kensington, Pa., to $17.00 per ton f. o. b. cars, New Kensington, Pa.

Defendant, in his affidavit of defense, admits the execution of the papers sued upon as the contracts between the parties, does not deny the allegation of plaintiff that it demanded instructions for shipments, and that the corporation and the defendant both notified the plaintiff not to ship any more

iron under the said contracts, as the same would not be received; does not deny that the price of iron had fallen on February 11, 1908, to $17.00 per ton f. o. b. cars, New Kensington; does not deny that the defense of the Allegheny Valley Malleable Iron Company to the plaintiff's suit against it for damages to the effect that its president, P. H. Murphy, had no authority to make the contract, was made with the approval and consent and acquiescence of P. H. Murphy, and the further allegation on the part of the plaintiff that P. H. Murphy is the owner of all the capital stock of the Allegheny Valley Malleable Iron Company, and that no stock has ever been issued to any other person, and no other person has contributed anything whatever to its capital.

In the third paragraph of defendant's affidavit of defense he attempts to set up a contemporaneous parol agreement to vary the written agreement upon which suit is brought by the plaintiff, but he does not allege that the oral agreement which he sets up was left out of the written contract by either fraud, accident or mistake. It is not necessary to cite authorities at this day to sustain the position that in order that a defendant may modify a written agreement by a contemporaneous parol agreement, he must allege and prove that the parol agreement was left out of the writing by fraud, accident or mistake. But there is another defect in the allegation of the third paragraph of the defendant's affidavit of defense. The paragraph reads: "Defendant is informed and believes and therefore avers," etc. Rule 13 of this court reads as follows: "All affidavits required by these rules may be made by the party or in proper cases by his agent. All facts and statements which are within affiant's knowledge shall be sworn or affirmed to be true, and all other facts and statements shall be sworn or affirmed to be true, as affiant is informed and believes and expects to be able to prove on the trial of the cause." It will be observed that the defendant alleges that he is informed and believes the allegations which he is about to make, but does not aver his ability to prove those allegations on the trial of the cause; and it is particularly important that this should be insisted upon where the character of proof is such as is required to vary a

written instrument. This defect will be found in many of the other paragraphs of the affidavit of defense, the defendant alleging that he is informed and believes, but not alleging that he expects to be able to prove the averments.

The contract sued upon provides "strikes, differences with workmen, accidents to machinery or other contingencies beyond the control of the buyers or sellers to be sufficient excuse for any delay traceable to such cause;" and in the sixth paragraph of the affidavit of defense the defendant claims that the financial crisis precipitated in October of 1907 was such a contingency beyond his control as to afford sufficient excuse for his not accepting the iron in February, 1908. It is a very serious question if the defendant's financial condition was one of the excuses contemplated by that contract. But even if it was, it was only a subject for delay, and not a reason for refusing, as defendant has admitted that he did refuse, to receive any more iron under that contract. While it might have been a cause for delay, it was no cause for rescinding the contract.

Many of the allegations in the affidavit of defense are so vague and uncertain as to their meaning as not to permit of their enforcement. For instance, in the eighth paragraph, defendant denies that the plaintiff was at all times ready and willing to ship in accordance with the terms of the contract actually made. We may assume that the defendant meant in that allegation that the plaintiff was not willing to ship in accordance with the terms of the contract, as he is attempting now to allege that contract.

In the twelfth paragraph of the affidavit of defense, Is the allegation of fraud on the part of the plaintiff sufficient to justify the defendant in rescinding the contract? and if the allegations of that paragraph were sufficiently specific, there might be enough in it to allow the question to go to the jury. The contract sued upon specifies the quantity of silicon, sulphur, phosphorus and manganese, and provides that the shipper shall furnish analyses to accompany each car. Defendant alleges that it had no occasion to use the pig iron shipped until within a few months of the filing of the affida-

vit of defense, and that then the said Malleable Iron Company "investigated the pig iron already so received and paid for, and has found that the same does not come up to the requirements contained in said specifications; that it is not pig iron of the kind and character and quality purchased by the said Malleable Iron Company; that some of said iron contained less than 60 per cent and more than 1.80 per cent of silicon; that some of the same contains sulphur greatly in excess of .05 per cent, and phosphorus greatly in excess of .20 per cent, and some also contains less than .50 per cent and in excess of .90 per cent of manganese. That said plaintiffs never complied with that portion of their contract which provides that the iron so shipped shall contain silicon as follows: One-third .60 per cent to one per cent, one-third one per cent to .40 per, cent, and one-third 1.40 per cent to 1.80 per cent." How much of the iron was not of the kind and quality provided for in the contract the affidavit does not state. To what extent it varied in silicon, manganese, sulphur and phosphorus, the affidavit does not state. If there was one pig which did not come up to the standard in the slightest degree it would fulfill the allegations of the affidavit of defense, and no court would permit the rescission of a contract for so slight a variance as that, particularly where the defendant could be so readily compensated in damages for any injury which he suffered.

As an illustration of the loose allegations in the affidavit of defense, in the ninth paragraph the defendant says: "It is further denied that the damages alleged to have been sustained by the plaintiff or any part thereof, were in fact sustained by him." But that is not a denial of the allegation of the plaintiff that the market price of pig iron at the date of the breach of this agreement was $17.00 a ton f. o. b. cars, New Kensington.

If we permit the defendant to state what the contract was, then he could allege that the plaintiff had suffered no damages.

*Error assigned* was the order of the court.

*William A. Griffith,* with him *John M. Freeman* and *David E. Mitchell,* for appellant.

*R. B. Petty*, with him *W. F. Petty*, for appellee.

PER CURIAM, January 3, 1910:

The judgment is affirmed on the opinion of the learned judge of the common pleas.